NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELLE BUNTING, CHARLES BUNTING, AND BEVERLYN GRISSOM, <br><br> Plaintiffs, <br><br> v. <br><br> NEW JERSEY OFFICE OF THE STATE COMPTROLLER, et al., <br><br> Defendants. | Civil No. 19-00026 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. No. 5) Plaintiffs' Complaint, in which Michelle Bunting, Charles Bunting, and Beverlyn Grissom allege that state agencies and officials violated their Sixth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and committed similar violations of New Jersey state law. For the reasons below, Defendants' motion is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED**.

I.     BACKGROUND

This case involves a dispute between the operators of a pediatric medical daycare and those involved in state administrative proceedings against the daycare. Plaintiffs formerly operated a pediatric medical daycare ("PMDC") known as Mercer County Children's Medical Daycare, LLC ("Mercer"). (Doc. No. 1-2 ("Compl.") at ¶ 4.) Mercer served young children with special health care needs in Trenton, New Jersey. (Compl. at ¶ 36.) The New Jersey Division of Medical Assistance and Health Services ("DMAHS") approved Mercer as a Medicaid provider. (*Id*. at ¶

1

38.) As an approved Medicaid provider, Mercer received an initial license in June 2003 from the New Jersey Department of Health and Senior Services ("DHSS," now known as the Department of Health). (*Id*. at ¶ 37.) That license authorized Mercer to care for up to 70 children. (*Id.*)

### A. Administrative History

As alleged in the Complaint, Mercer's license permitted care for up to 70 children. (*Id*. at ¶ 42). However, in November 2003, DHSS notified all PMDC providers that it would enforce a cap of 27 patients. (*Id*. at ¶ 42.) Wishing to protest the 27-child cap, Mercer requested a hearing before the Office of Administrative Law ("OAL"). (*Id*. at ¶¶ 44–47.) The presiding ALJ ultimately allowed Mercer to continue providing services for to up to 70 children as its initial license permitted. (*Id*.)

In November 2009, the state adopted new PMDC regulations that again included a 27-child cap. (*Id.* at ¶ 48.) In March 2011, DHSS conducted a survey and found that Mercer exceeded the 27-child cap. (Compl. at ¶ 54.) As such, DHSS issued a correction plan that: (1) included a curtailment order forbidding Mercer from admitting new children to the facility and (2) required Mercer to engage a Consultant Administrator. (*Id*. at ¶¶ 55–56, 61.) DHSS also fined Mercer $1.5 million for violating the 27-child cap and other PMDC regulations. (*Id*.)[1]

Mercer also filed a complaint in the District of New Jersey against DHSS, the New Jersey Medicaid Fraud Division ("MFD"), the New Jersey Department of Human Services ("DHS"), the New Jersey Office of the State Comptroller ("OSC"), the New Jersey Office of the Attorney General ("OAG"), Carlisle & Associates[2], and several state officials. (*See* Doc. No. 5-7.) On May

---

[1] Eventually, DHSS renewed Mercer's license in August 2011, but reduced its slots to 27. (*Id*. at ¶ 78.) Between September 2011 and July 2012, DHSS found that Mercer violated this cap on three occasions and fined them accordingly. (*Id*. at ¶¶ 94, 110, 113.)

[2] Carlisle is the administrative consultant Mercer hired as required under DHSS' 2011 correction plan.

16, 2013, Mercer filed an amended complaint ("2013 Amended Complaint"), which included claims for violation of due process and equal protection rights, as well as 42 U.S.C. § 1983 claims against both state agency and state official defendants. *Id*. In four separate opinions, Judge Anne Thompson of the District of New Jersey granted defendants' Rule 12(b)(6), Rule 12(c), and Rule 56 motions to dismiss all of Mercer's claims.[3]

Following dismissal of its federal case, Mercer continued to challenge DHSS's actions through OAL. (Compl. at ¶ 118.) Over time, DHSS withdrew the fines and penalties it had assessed on Mercer, withdrawing the final fines and penalties two days before the OAL hearings were to commence in October 2018. (*Id*. at ¶¶ 120–21, 124.) As a result of the withdrawal of all the penalties and fines, the OAL hearing was cancelled. (*Id*. at ¶ 122–23.)

In parallel to the actions taken by DHSS, on March 28, 2011, MFD issued a Notice of Claim and Certificate of Debt seeking to recover nearly $12.5 million from Mercer for improper Medicaid billing. (*Id*. at ¶¶ 130–31.) The $12.5 million represented the amount of Medicaid disbursements for the children allegedly admitted in violation of state regulation and the associated civil penalties for Mercer's violations. (*Id*. at ¶¶ 130–31.) The MFD also ordered withholding of Mercer's Medicaid reimbursements. (*Id*. at ¶ 129.) In February 2012, Mercer challenged the March 2011 Notice of Claim before an ALJ. (*Id*. at ¶¶ 126–29, 135–36.) Due to financial difficulties, Mercer ceased operations in July 2012. (*Id*. at ¶ 138.)

On October 3, 2013, MFD issued an Amended Notice of Claim and Amended Certificate of Debt for $6.2 million in damages. (*Id*. at ¶ 139.) The ALJ issued an initial decision on Plaintiffs'

---

[3] *See Mercer Cty. Children's Med. Daycare, LLC v. O'Dowd*, No. 13-1436, 2014 WL 546346, at *1 (D.N.J. Feb. 10, 2014); *Mercer Cty. Children's Med. Daycare, LLC v. O'Dowd*, No. 13-1436, 2015 WL 5335590, at *1 (D.N.J. Sept. 14, 2015); *Mercer Cty. Children's Med. Daycare, LLC v. O'Dowd*, No. 13-1436, 2015 WL 5545478, at *1 (D.N.J. Sept. 18, 2015); *Mercer Cty. Children's Med. Daycare, LLC v. O'Dowd*, No. 13-1436, 2015 WL 5822291, at *1 (D.N.J. Oct. 1, 2015).

claim on January 5, 2017, and DMAHS issued a final decision dismissing most of Plaintiffs' claims on March 10, 2017. (*Id*. at ¶ 142.)

After DMAHS' final decision, MFD issued a second amended Certificate of Debt in September 2018. (*Id*. at ¶¶ 148.) MFD's amendment limited the amount of recovery sought to $638,807 and named only Mercer and Plaintiff Michelle Bunting (*Id*. at ¶ 148.) Michelle Bunting appealed the final DMAHS decision to the New Jersey Appellate Division (*id*. at ¶¶ 143–44), which affirmed DMAHS' decision in August 2019. *Mercer Cty. Children's Med. Daycare, LLC v. Div. of Med. Assistance & Health Servs.*, Docket No. A-3804-16T3, 2019 WL 3729797 (N.J. Super. Ct. App. Div. Aug. 8, 2019).

**B. This Case**

In November 2018, Plaintiffs filed the instant Complaint in New Jersey Superior Court. (Compl. at 2.) Defendants then removed the matter to this Court in January 2019. (Doc. No. 1.)

Plaintiffs' Complaint has twenty-two claims, many of which are vague and seem to overlap. Some claims concern DHSS' imposition of fines and penalties for alleged violations of the 27-child cap, while others concern the Certificate of Debt issued by MFD, and still others relate to both. Despite this confusion, this Court finds it best to organize Plaintiffs' claims into four categories.

First, in Counts I, II, VI, VII, XII, and XIII, Plaintiffs allege that Defendants violated Plaintiffs' Fourteenth Amendment substantive and procedural due process rights. Second, in Counts III, VIII, and XXI, Plaintiffs request relief under 42 U.S.C. § 1983 for alleged violations of Medicaid regulations and Fourteenth Amendment procedural and substantive due process and equal protection rights. Third, in Count XI, Plaintiffs contend that by filing a certificate of debt

4

against Plaintiffs Michelle Bunting and Charles Bunting, Defendants assessed criminal penalties against the Buntings without benefit of a jury trial in violation of the Sixth Amendment.

Finally, in Counts IV, V, IX, X, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXII, Plaintiffs advance claims under three New Jersey laws: N.J.S.A. 10:6-1 *et seq.* (the New Jersey Civil Rights Act or NJCRA), N.J.S.A. 59:1-1 *et seq.* (the New Jersey Tort Claims Act or NJTCA), and N.J.S.A. 59:13-1 *et seq.* (the New Jersey Contractual Liability Act or NJCLA). The substance of Plaintiffs' NJCRA claims parallels that of the federal claims under 42 U.S.C. § 1983. The common law tort and contract claims include assertions of malice, abuse of process, breach of contract, and breach of covenant of good faith and fair dealing.[4] Plaintiffs request declaratory relief, injunctive relief, reinstatement of Mercer's original 70-slot license, and damages.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff

---

[4] Plaintiffs confirm these claims are brought under state law when arguing that they substantially complied with both the NJTCA and the NJCLA. (Doc. No. 9-2 ("Pls.' Br.") at 32–36.)

5

must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Defendants argue that Plaintiffs' claims fail under an array of legal theories. The Court agrees that under some or all of these theories, Plaintiffs' claims must fail. Because the Court finds that all of Plaintiffs' federal claims cannot go forward, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and thus does not examine their merits.

The Court begins its analysis of Plaintiffs' federal law claims by examining how the doctrine of res judicata applies in light of Judge Thompson's dismissal of Plaintiffs' prior action in the District of New Jersey. The Court then turns to Plaintiffs' remaining claims in categories one through three—namely, Plaintiffs' direct Fourteenth Amendment claims, their Section 1983 claims, and their Sixth Amendment claim.

### A. Res Judicata as to Counts VI, VII, and VIII

In Counts VI, VII, and VIII, Plaintiffs raise constitutional and statutory challenges related to the actions taken by Defendants DHSS, OAG, O'Dowd, Gottlieb, and Kennedy to enforce the 27-child cap and the subsequent administrative proceedings (Compl. at ¶¶ 199–224.) The

Defendants move to dismiss these claims as precluded by the doctrine of res judicata. (Doc. 5-3 ("Defs.' Brief") at 14–17.)

The defense of res judicata, or claim preclusion, "may be raised and adjudicated on a motion to dismiss and the court can take judicial notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (per curiam). Thus, "a court may take judicial notice of the record from a previous court proceeding between the parties." *Id*. However, the defendant still has the burden of proving that res judicata applies. *See id*.

Res judicata, or claim preclusion, bars a subsequent suit where there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation omitted). Res judicata "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

Defendants argue that Judge Thompson's dismissal of Mercer's 2013 suit serves to bar Plaintiffs' claims. Judge Thompson dismissed Mercer's claims on a motion for failure to state a claim, a motion for judgment on the pleadings, and on motions for summary judgment. Such dismissal is enough to be a final judgment on the merits for purposes of res judicata. *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (finding dismissal for failure to state a claim sufficient for res judicata). As such, the first element of the res judicata defense is satisfied.

The next issue is whether Plaintiffs' claims in this action as the same as those brought in the 2013 case. The Court must take a "broad view of what constitutes the same cause of action" and focus on the "*essential similarity* of the underlying events giving rise to the various legal claims." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (internal quotation omitted). Several factors guide this inquiry: "(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary are the same . . . ; and (4) whether the material facts alleged are the same." *Id*. (internal quotation omitted).

In its 2013 Amended Complaint, Mercer challenged the enforcement of the 27-child cap as a violation of due process. (Doc. No. 5-7 at ¶¶ 207–220). In Counts VI, VII, and VIII, Plaintiffs again assert that Mercer received inadequate process during the enforcement of the 27-child cap. Further, the overwhelming majority of the events detailed in the Complaint, including the initial issuance of fines and the correction plan occurred prior to the filing of the 2013 Amended Complaint and were discussed therein. Although Plaintiffs now assert that Defendants were acting in violation of 42 C.F.R. §§ 455.12–23, the underlying facts remain the same.

Plaintiffs assert that that their claims are not precluded because they allege that Defendants continued to deny them due process after Judge Thompson dismissed their federal case by denying them an administrative hearing, before finally dismissing all the fines and penalties against them. (Pl.'s Brief at 8; Compl. at ¶¶ 118–25). Although these events did occur after Mercer filed its 2013 Amended Complaint, "[a] suit can be claim precluded even if it is based in part on facts that occurred after the initial suit." *Family Civil Liberties Union v. State*, 386 F. Supp. 3d 411, 439 (D.N.J. 2019) (quoting *Amid v. Chase*, 720 F. App'x 6, 10 (2d Cir. 2017)) (internal quotation marks omitted). The key issue is whether the later events give rise to

"new and distinct damages." *Family Civil Liberties Union*, 386 F. Supp. 3d at 440, 440 n.14 (finding systemic constitutional challenge precluded where new action merely "add[ed] allegations of similar examples of the same constitutional harm"); *see also Amid*, 720 F. App'x 10 (finding that second challenge to condition of approval for site plan was precluded where in the interim plaintiff had petitioned for relief from the defendant and been denied).

In this case, the Plaintiffs' alleged harm stems entirely from events that occurred in 2011 and 2012, when DHSS began its effort to enforce the 27-child cap against Mercer, resulting in Mercer ceasing operations in 2012. Plaintiffs do not allege that the withdrawal of the fines and penalties against them and the cancellation of the 2018 administrative hearing harmed them, beyond preventing them from challenging the legality of Defendants' actions during 2011 and 2012. Such harm is not distinct from the alleged harm underlying Mercer's 2013 Amended Complaint. Taking the required "broad view," the Court finds that Plaintiffs' claims are essentially similar to the claims in the 2013 Amended Complaint.

Finally, the requirement of privity is easily established. Although the 2013 lawsuit was filed on behalf of Mercer rather than these Plaintiffs as individuals, Plaintiffs are the assignees of Mercer (Compl. at ¶ 5), and it is well established that an assignee is in privity with her assignor. *See Marte v. Deutsche Bank Nat. Tr. Co.*, Civil Action No. 2:15-0896 (CCC), 2016 WL 6403082 at *3 (D.N.J. Oct. 26, 2016) (finding assignor-assignee relationship to permit application of res judicata); *see also Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392–93 (3d Cir. 2002) (finding that in the res judicata context the parties in an assignor-assignee relationship are in privity). Consequently, the requirements of res judicata are met, and Plaintiffs' claims in Counts VI, VII, and VIII are dismissed with prejudice.

## B. Direct Fourteenth Amendment Claims

In Counts I, II, XII, and XIII, Plaintiffs allege that Defendants violated their Fourteenth Amendment substantive and procedural due process rights. More specifically, in Counts I and II, Plaintiffs suggest that OSC, DMAHS, MFD, Anderson, and Lichtblau violated Plaintiffs' Fourteenth Amendment rights when they failed to comply with federal and state regulatory requirements, failed to provide Plaintiffs with an expedited hearing, and refused to vacate Plaintiffs' Certificate of Debt. (Compl. at ¶¶ 166–71, 177–81.) Finally, Plaintiffs assert that all Defendants conspired to violate Plaintiffs' Fourteenth Amendment due process rights (Count XII) and that, in violating Plaintiffs' Fourteenth Amendment rights, Defendants were motivated by bad faith or improper motives in assessing penalties and in revoking Plaintiffs' license (Count XIII). (*Id*. at ¶¶ 239–40, 243–45.)

Defendants are correct that all these claims fail because they are brought directly under the Fourteenth Amendment, which provides no private right of action for a plaintiff to enforce rights otherwise enforceable under Section 1983. *See, e.g.*, *New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, No. 09-683, 2010 WL 2674565, at *6 (D.N.J. June 30, 2010) (dismissing claims brought directly under the Fourteenth Amendment because a plaintiff "may not sue a state defendant directly under the Constitution where [Section 1983] provides a remedy"); *Aiken v. Twp. of Morris*, No. 90-cv-861, 1990 WL 119312, at *2 (D.N.J. Aug. 14, 1990) (dismissing claims "arising directly under the Fourth, Fifth and Fourteenth Amendments" and noting that "relief is not awarded on a claim arising directly under the Constitution" because Section 1983 is the proper vehicle to enforce federal rights). Accordingly, Plaintiffs' direct constitutional claims fail as a matter of law.

Even if the Court overlooked Plaintiffs' decision to bring these claims directly under the Constitution,[5] many of them would also fail as duplicative of Plaintiffs' other constitutional claims under Section 1983, discussed more fully below. That is because when Section 1983 "affords a remedy for infringement of one's constitutional rights, identical claims raised under the Fourteenth Amendment are redundant, rendering the outcome of the § 1983 claims dispositive of the independent constitutional claims." *Capogrosso v. Supreme Court*, 588 F.3d 180, 185 (3d Cir. 2009). Here, the direct constitutional claims against OSC, DMAHS, MFD, Anderson, and Lichtblau in Counts I and II directly parallel Plaintiffs' Section 1983 claims in Count III. Accordingly, Plaintiffs' direct constitutional claims are dismissed, with prejudice.

**C. Claims Under Section 1983**

In Counts III and XXI, Plaintiffs contend that they are entitled to relief under Section 1983 because Defendants violated their Fourteenth Amendment procedural and substantive due process rights, as well as Plaintiffs' contract and property rights.

More specifically, in Count III, Plaintiffs assert that OSC, DMAHS, MFD, Anderson, and Lichtblau violated 42 C.F.R. §§ 455.12–455.23 by "failing to comply with the federal and state

---

[5] The Court will not do so here, even though *pro se* pleadings should be held to a less stringent standard than formal pleadings drafted by lawyers. *See Thomas v. Ortiz*, No. 18-cv-1602, 2019 WL 989765, at *2 (D.N.J. Feb. 27, 2019). The Court will not overlook Plaintiffs' decision to bring these claims directly under the Constitution instead of Section 1983 because Plaintiffs have demonstrated awareness that Section 1983 is the proper vehicle to vindicate the alleged deprivations of their Constitutional rights. Plaintiffs have brought three claims under Section 1983, and Plaintiff Grissom is a lawyer. (Compl. at ¶ 163.) Indeed, Plaintiffs have spent years litigating Fourteenth Amendment claims against these—or functionally identical—Defendants. At base, Plaintiffs here are unlike other *pro se* parties for whom courts have liberally construed direct constitutional claims to arise instead under Section 1983. *See, e.g.*, *Fuschetto v. Foster*, No. 15-cv-5485, 2017 WL 374475, at *1 n.1 (D.N.J. Jan. 25, 2017) (liberally reading *pro se* complaint to construe it as asserting claims under Section 1983 when, unlike here, the plaintiff did "not specifically mention" Section 1983 in seeking to vindicate her Fourteenth Amendment rights); *Bailey v. Pa. Dep't of Corr.*, No. 10-cv-1039, 2011 WL 6937473, at *3 (W.D. Pa. Nov. 29, 2011) (same).

11

laws in 1) issuing the notice of claim, 2) filing the certificate of debt, 3) denying an expedited hearing and 4) failing to provide a hearing to [Plaintiffs] Michelle Bunting and Charles Bunting." (Compl. at ¶ 188.) In Count XXI, Plaintiffs assert that all Defendants violated "Plaintiffs' rights contract [sic] and property rights" on the basis of race, as Plaintiff Michelle Bunting is Asian and African-American, Plaintiff Beverlyn Grissom is African-American, and 99% of the children served by Mercer during the 2004-2010 period were African-American. (*Id.* at ¶¶ 39, 47, 278.) Plaintiffs contend that these acts violated "42 USCA 1981(a), 1982 and 1983." (*Id*. at ¶ 278.)

The Court assesses these claims below. The Court will begin with Counts III and VIII as against the state entity Defendants and the state official Defendants. It will then turn to Count XXI as against all Defendants.

1. **Sovereign Immunity**

The Eleventh Amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (internal quotation omitted). Accordingly, New Jersey state agencies "established in the Executive Branch of State Government" qualify for Eleventh Amendment sovereign immunity, "regardless of the relief sought," unless an exception to the immunity rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation omitted). Those exceptions apply when (1) Congress abrogates the immunity, (2) a state waives immunity, or (3) when a plaintiff sues an individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, OSC, DMAHS, and MFD are immune from suit under the Eleventh Amendment because they are New Jersey state agencies established by the executive branch. *See e.g.*, *Ong v. Superior Court of Hudson Cty.*, No. 16-cv-6777, 2018 WL 324722, at *4 (D.N.J. Jan. 8, 2018) (finding that state agency is "under the umbrella of the State's sovereign immunity"); *Rouse v. New Jersey Dep't of Health and Human Serv.*, No. 15-cv-1511, 2015 WL 5996324, at *2 (D.N.J. Oct. 13, 2015) (holding that the New Jersey Department of Human Services and Department of Health are "arms of the state entitled to Eleventh Amendment immunity"). Plaintiffs also fail to allege that any exception applies to these Defendants.[6]

### 2. Absolute Immunity

Like the sovereign immunity that shields the state entity Defendants from Counts III and VIII, the state official Defendants are shielded by absolute immunity. As the Supreme Court has noted, state agency officials who perform "certain functions analogous to those of a prosecutor" are entitled to absolute immunity from liability under 42 U.S.C. § 1983. *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976) (finding prosecutorial immunity a defense to Section 1983 suits). "The decision to initiate administrative proceedings against an individual . . . is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution," involving "broad discretion." *Butz*, 438 U.S. at 515. Agency attorneys are likewise afforded absolute immunity, as there is "no substantial difference" in

---

[6] Although Plaintiffs do seek injunctive relief from the state agencies in Count III, the third exception to sovereign immunity does not apply because it applies only to claims for injunctive relief against individual defendants, not claims against the State. *See Reardon v. New Jersey*, No. 17-cv-5868, 2018 WL 4964548, at *3 (D.N.J. Oct. 15, 2018) (finding that sovereign immunity barred claim for injunctive relief against the state of New Jersey); *see also Frompovicz v. Pennsylvania Dep't of Envtl. Prot.*, No. 17-cv-2790, 2018 WL 1444168, at *3 (E.D. Pa. Mar. 22, 2018) (finding that sovereign immunity shielded agency defendants from injunctive relief claim).

function between the agency attorney engaging in an adjudication and the prosecutor bringing evidence before a court. *Id.*

Here, the Court agrees with Defendants' argument that Plaintiffs' Section 1983 claim in Count III against individual officials Anderson and Lichtblau must be dismissed because these Defendants are entitled to absolute immunity for the conduct alleged.

Anderson and Lichtblau, as Inspector General and Director of MFD during the relevant time period, issued the initial and amended certificates of debt against Plaintiffs. (Compl. at ¶¶ 130, 133, 148.) Therefore, Anderson and Lichtblau merely initiated administrative proceedings to collect erroneously disbursed Medicaid funds and the associated civil penalty. Even viewed in the light most favorable to Plaintiffs, Anderson and Lichtblau's actions are akin to prosecutorial functions protected by absolute immunity. *See Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 495–96 (3d Cir. 1997) (finding child welfare workers entitled to absolute prosecutorial immunity due to their role in initiating and prosecuting dependency proceedings). Accordingly, these claims are all dismissed, with prejudice.[7]

### D. Race Discrimination Claim in Count XXI

---

[7] Plaintiffs' requests for injunctive and declaratory relief do not change the conclusion that Count III must fail. (Compl. at ¶ 190.) To obtain what Plaintiffs call "prospective" injunctive relief (Doc. No. 9-2 at 22–24), Plaintiffs must have standing, which requires a plaintiff to show a "real and immediate threat of repeated injury." *Reardon*, 2018 WL 4964548, at *3 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). The same or similar standard has been applied to requests for declaratory relief. *See Burns v. Alexander*, 776 F. Supp. 2d 57, 78 n.18 (W.D. Pa. 2011) (same standard); *see also Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (internal quotation omitted) (explaining that "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future"). Here, Plaintiffs allege no facts to plausibly meet these burdens. Indeed, even viewed in the light most favorable to Plaintiffs, their claims of difficulty finding employment and selling their homes do not plausibly suggest ongoing and future injury. (Compl. at ¶¶ 159–63.)

In Count XXI, Plaintiffs allege that all Defendants violated their contract and property rights under Section 1983 by discriminating against them based on their race and the race of the population that Mercer served. (Compl. at ¶ 278.) Under Section 1983, a plaintiff must allege facts to plausibly suggest a "violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

Although not specifically mentioned in the Complaint, Plaintiffs appear to assert that Defendants' alleged race discrimination violated Plaintiffs' Equal Protection rights guaranteed by the Fourteenth Amendment. "To state an equal protection claim, a plaintiff must (i) allege facts showing the existence of purposeful discrimination; and (ii) have received treatment different from that received by other individuals similarly situated." *Rayfield v. City of Paterson*, No. 17-cv-5144, 2019 WL 2959899, at *6 (D.N.J. July 9, 2019) (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)).

Here, Plaintiffs fail to state an Equal Protection claim because they allege no facts to plausibly support an inference of intentional race-based discrimination. Although Plaintiffs identify as racial minorities who served the African American community at Mercer, Plaintiffs allege no facts to support that they were treated differently than others in the enforcement of PMDC regulations, claims for return of Medicaid disbursements, and for payment of civil penalties. (*Id.* at ¶¶ 61, 101.) Indeed, Plaintiffs merely speculate that because other facilities were not fined, Defendants purposefully targeted Plaintiffs based on their race. But speculations are not sufficient to support the required inference of intentional discrimination. *See Rayfield*, 2019 WL 2959899, at *8 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)).

Even if some Defendants here are of a different race, that alone does not plausibly support an inference that those Defendants targeted Plaintiffs because of their race. (*See e.g.*, Compl. at ¶¶ 80, 82, 86.) Nor can Plaintiffs meet their burden to allege intentional discrimination merely by relying on the state's enforcement proceedings against Mercer. Mere enforcement, without more, does not plausibly suggest that the enforcement was motivated by an illegal animus for Plaintiffs.

Finally, the Court notes that although Plaintiffs label Count XXI as a claim under Section 1983, they also reference two other federal statutes in the body of the count: Sections 1981 and 1982. (Compl. at ¶ 278.)

To the extent Plaintiffs seek to assert those claims, neither can survive. Any Section 1981 claims fail for the same reason as Plaintiffs' Section 1983 claims because Section 1981 "does not itself provide a remedy against state actors," and thus "a party must bring a claim under 42 U.S.C. § 1983 to enforce the rights guaranteed in § 1981." *Byrd v. City of Philadelphia*, No. 12-cv-4520, 2013 WL 5728669, at *4 (E.D. Pa. Oct. 22, 2013) (internal quotation marks omitted) (quoting *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009)); *see also Scully v. City of Jersey*, No. 15-cv-6100, 2018 WL 6804274, at *10 n.12 (D.N.J. Dec. 27, 2018) (finding that "claims relating to Plaintiff's Section 1981 rights are subsumed by Plaintiff's Section 1983 conspiracy claim"). Any Section 1982 claim likewise fails because Plaintiffs do not clearly allege what specific contract and property rights have been infringed, let alone that Defendants deprived them of any such rights because of their race. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotation omitted) (explaining that to state a Section 1982 claim, a plaintiff "must allege with specificity facts sufficient to show or raise a plausible inference of (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived

plaintiff of his rights because of race"). Thus, Count XXI is dismissed in its entirety, without prejudice.

**E. Claim Under the Sixth Amendment of the U.S. Constitution**

In Count XI, Plaintiffs contend that OSC, DMAHS, MFD, Anderson, and Lichtblau violated Plaintiffs' Sixth Amendment and state constitutional rights because in filing a certificate of debt against them, these defendants assessed criminal penalties without benefit of a jury trial. Plaintiffs' assert that the same conduct constitutes a similar violation of the New Jersey Constitution. (Compl. at ¶ 233.) The Court addresses the Sixth Amendment portion of Count XI here, and the state law portion of it below in Section III.F of the Opinion.

The Sixth Amendment "does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). According to MFD's March 2011 Notice of Claim against Mercer, Plaintiffs were assessed treble damages "pursuant to N.J.S.A. 30:4D-17(e)."[8] (Doc. No. 9-3, Notice of Claim at 88). N.J.S.A. 30:4D-17(e) states, in relevant part: "[a]ny person . . . who violates the provisions of any of the foregoing subsections . . . shall, in addition to any other penalties provided by law, be liable to civil penalties . . . ." N.J.S.A. 30:4D-17(e) does not provide for criminal penalties. *See In re Garay*, 444 A.2d 1107, 1110 (N.J. 1982) (holding that the "penalty provisions of N.J.S.A. 30:4D-17(e) are civil remedies). Consequently, Plaintiffs have not alleged a plausible Sixth Amendment violation. Accordingly, Plaintiffs' Sixth Amendment claim is dismissed, with prejudice.

**F. Plaintiffs' Remaining Claims**

---

[8] Although this document is attached as an exhibit to Plaintiffs' opposition brief and not the Complaint, the Court may consider it in deciding Defendants' motion because it is a document on which Count XI is based. (Compl. at ¶¶ 129–130, 234–237.) *See Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (holding that courts may consider documents outside the complaint on a 12(b)(6) motion to dismiss when Plaintiffs have notice of the document and Plaintiffs' claims are based on the document).

Finally, the Court addresses Plaintiffs' remaining claims under the New Jersey Constitution, the New Jersey Civil Rights Act, the New Jersey Tort Claims Act, and the New Jersey Contractual Liability Act. (Compl. at ¶¶ 191–98, 225–32, 247–76, 280–82.) Having dismissed all of Plaintiffs' federal claims for the reasons above, and without any affirmative justification for deciding the remaining state law claims, the Court decline to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3) (allowing district courts to decline to exercise supplement jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, Plaintiffs' remaining state law claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED**. An Order shall issue.

Dated: 09/20/2019								s/ Robert B. Kugler
										ROBERT B. KUGLER
										United States District Judge