IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| MICHELLE BUNTING, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Civil No. 19-26 (RBK/JS) |
|  | : **OPINION** |
| NEW JERSEY OFFICE OF THE STATE COMPTROLLER, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiffs Michelle Bunting, Charles Bunting, and Beverlyn Grissom's Motion File an Amended Complaint (Doc. No. 16). The Court previously dismissed Plaintiffs' initial Complaint. Although Plaintiffs' proposed Amended Complaint (Doc. No. 16-3 ("Am. Compl.")) provides more detailed factual allegations in support of their claims, the Court finds that their attempt to amend is nonetheless futile. As such, Plaintiffs' Motion to Amend is **DENIED**.

I.  BACKGROUND

   A. Factual Allegations

The proposed Amended Complaint contains the following allegations. Plaintiffs formerly operated a pediatric medical daycare ("PMDC") known as Mercer County Children's Medical Daycare, LLC ("Mercer"), which served young children with special healthcare needs in Trenton, New Jersey. (Am. Compl. at ¶¶ 6, 29). Michelle Bunting and Grissom are African-American, (*id.* at ¶ 142), and many of the children Mercer served were African-American, (*id.* at ¶ 51). Although

Mercer was initially licensed to care for up to 70 children, starting in 2003 the New Jersey Department of Health and Senior Services ("DHSS") began attempts to enforce a capacity limit of 27 children on Mercer. (*Id*. at ¶ 35). These attempts came to a head in March 2011, when DHSS issued a correction plan to Mercer that: (1) included a curtailment order forbidding Mercer from admitting new children to the facility and (2) required Mercer to engage a Consultant Administrator. (*Id*. at ¶ 47).

On March 11, 2011, Deborah Gottlieb, the Director of Program Compliance and Health Care Financing at DHSS, issued a Notice of License Revocation to Mercer due to its failure to retain a Consultant Administrator, requiring Mercer to submit a closure plan to DHSS. (*Id*. at ¶ 49). On the same day, Michael Kennedy, a New Jersey Deputy Attorney General told Mercer that it needed to immediately discharge 53 of its patients. (*Id*. at ¶ 51). In response, Mercer retained New Era, LLC ("New Era") as a Consultant Administrator. (*Id*. at ¶ 52). New Era developed a plan that included transferring Mercer's patients to Millhouse, another PMDC in Trenton owned by a Caucasian person. (*Id*. at ¶ 53). On March 15, 2011, Gottlieb issued a $1.6 million fine to Mercer, mainly due to Mercer's failure to comply with the 27-child cap. (*Id*. at ¶ 55). DHSS also began referring patients seeking admission to Mercer to Millhouse. (*Id*. at ¶ 58).

On April 8, 2011, Gottlieb advised Mercer that it should retain Carlisle and Associates, LLC ("Carlisle") as its Consultant Administrator, rather than New Era. (*Id*. at ¶ 59). Although Mercer was unaware at the time, New Jersey State Assemblyman Louis Greenwald was the Vice President, Chief Counsel, and a principal of Carlisle. (*Id*. at ¶¶ 61–62). Pursuant to Gottlieb's advice, Mercer cancelled its contract with New Era and retained Carlisle, even though Carlisle charged $10,000 more per month. (*Id*. at ¶ 60).

Over the next few months, Plaintiffs met and had calls with Gottlieb and Kennedy regarding Mercer's situation. (*Id*. at ¶¶ 58–110). In August 2011, Carlisle emailed Michelle Bunting and Grissom demanding immediate payment of $76,250. (*Id*. at ¶ 86). Greenwald himself made calls to Mercer and to Mercer's counsel demanding payment. (*Id*. at ¶¶ 91, 93). On August 17, 2011, Mercer paid Carlisle $50,000. (*Id*. at ¶ 95). Gottlieb issued a series of fines to Mercer for its failure to pay Carlisle, as required by the correction plan. (*Id*. at ¶¶ 96, 98, 108).

On November 10, 2011, Mary O'Dowd, the Commissioner of the New Jersey Department of Health, indicated in a court filing that DHSS's restrictions on Mercer were to enforce the 27-child cap, and that the economic harm Mercer was suffering was not a basis for stopping enforcement. (*Id*. at ¶¶ 114–15)

On July 10, 2012, Kennedy lifted the admissions curtailment imposed by the March 2011 correction plan. (*Id*. at ¶ 124). Nevertheless, Mercer ceased operations on July 25, 2012. (*Id*. at ¶ 128). DHSS eventually withdrew all of the fines it had issued to Mercer. (*Id*. at ¶¶ 135–37).

### B. Procedural Background

Plaintiffs have most of the past decade challenging DHSS's enforcement of the 27-child cap and seeking damages for their losses in various fora—indeed, this is the second time this matter has landed in federal court. *See Mercer Cty. Childrens Medical Daycare, LLC v. O'Dowd*, No. 13-1436, 2014 WL 546346 (D.N.J. Feb. 10, 2014). This iteration began when Plaintiffs filed a Complaint in New Jersey Superior Court in November 2018, which Defendants timely removed in January 2019. (Doc. No. 1). Defendants filed a Motion to Dismiss (Doc. No. 5) on January 23, 2019, which the Court granted on September 20, 2019 (Doc. Nos. 12, 13).

Plaintiffs initial Complaint brought twenty-two counts—ten under federal causes of action, twelve under state law causes of action. Of these, the Court dismissed nine of the federal counts

with prejudice, one federal count without prejudice, and then declined to exercise supplemental jurisdiction over the state law counts. (Doc. No. 13). The one federal count dismissed without prejudice attempted to state a claim under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourteenth Amendment Equal Protection rights on the basis of their race; the Court dismissed it because the Complaint did not contain any allegations giving rise to a plausible inference of intentional racial discrimination. *Bunting v. New Jersey Office of the State Comptroller*, No. 19-26, 2019 WL 4565232, at *7–8 (D.N.J. Sept. 20, 2019).

Plaintiffs' proposed Amended Complaint substantially narrows the scope of this litigation, as it now only names DHSS, Gottlieb, Kennedy, O'Dowd, and Greenwald as defendants, and only contains six counts, as opposed to twenty-two. In Count I, Plaintiffs bring an Equal Protection claim under Section 1983, alleging that Defendants intentionally discriminated against Plaintiffs on the basis of race. In Counts II, III, and IV, Plaintiffs bring claims under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6–1 *et seq*. Count V brings a claim for malicious use of process, while Count VI brings a claim for abuse of process.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, a motion to amend the complaint may be denied where there is undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). "In

4

assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. (citations omitted).

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, a court "assume[s] the[] veracity" of well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive when a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

Plaintiffs' Section 1983 claim asserts that Defendants selectively enforced the 27-child cap against them due to their race, in violation of the Equal Protection Clause of the Fourteenth Amendment. While Plaintiffs' initial Complaint failed to support this claim with any allegations of differential treatment, Plaintiffs now allege that even though DHSS enforced the 27-child cap against Mercer, it did not do so against the similarly situated Millhouse facility, which is owned by a Caucasian. (Am. Compl. at ¶¶ 146–48). Defendants contend that they are either immune from suit under Section 1983 or are otherwise improper defendants. (Doc. No. 19 at 11–12). The Court agrees with Defendants.

### A. DHSS—Sovereign Immunity

The Eleventh Amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (internal quotation omitted). Accordingly, New Jersey state agencies "established in the Executive Branch of State Government" qualify for Eleventh Amendment sovereign immunity, "regardless of the relief sought," unless an exception to the immunity rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation omitted). Those exceptions apply when (1) Congress abrogates the immunity, (2) a state waives immunity, or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Defendant DHSS is immune from suit under the Eleventh Amendment because it is a New Jersey state agency established by the executive branch. *See e.g.*, *Ong v. Superior Court of Hudson Cty.*, No. 16-6777, 2018 WL 324722, at *4 (D.N.J. Jan. 8, 2018) (finding that state agency is "under the umbrella of the State's sovereign immunity"); *Rouse v. New Jersey Dep't of Health and Human Serv.*, No. 15-1511, 2015 WL 5996324, at *2 (D.N.J. Oct. 13, 2015) (holding that the New Jersey Department of Human Services and Department of Health are "arms of the state entitled to Eleventh Amendment immunity").[1]

### B. Gottlieb, O'Dowd, Kennedy—Absolute Immunity

---

[1] The proposed Amended Complaint purports to seek injunctive relief in the form of reinstatement of Mercer's 70-slot license. (Am. Compl. at ¶ 161). In its prior Opinion, the Court dismissed Plaintiffs' claims for "prospective" injunctive relief for lack of standing. *Bunting*, 2019 WL 4565232, at *7 n.7. As the Court explained at that time, in order to have standing, plaintiffs must show a "real and immediate threat of repeated injury." *See Reardon v. New Jersey*, No. 17-cv-5868, 2018 WL 4964548, at *3 (D.N.J. Oct. 15, 2018) (internal quotation marks omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). As was the case with the initial Complaint, the proposed Amended Complaint contains no plausible allegations sufficient to meet this burden.

Plaintiffs also sue Gottlieb, O'Dowd, and Kennedy in their individual capacities for damages. As the Supreme Court has noted, state agency officials who perform "certain functions analogous to those of a prosecutor" are entitled to absolute immunity from liability under 42 U.S.C. § 1983. *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976) (finding prosecutorial immunity a defense to Section 1983 suits). "The decision to initiate administrative proceedings against an individual . . . is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution," involving "broad discretion." *Butz*, 438 U.S. at 515. Agency attorneys are likewise afforded absolute immunity, as there is "no substantial difference" in function between the agency attorney engaging in an adjudication and the prosecutor bringing evidence before a court. *Id*.

Plaintiffs' Section 1983 claim is based on DHSS's supposedly selective enforcement of the 27-child cap against Mercer. As such, Defendants Gottlieb and O'Dowd are being sued for their for their role in DHSS's decision to bring sanctions against Mercer and to initiate administrative proceedings, while Defendant Kennedy is being sued for his role in representing DHSS in the course of these administrative proceedings. Therefore, Gottlieb, O'Dowd, and Kennedy are all entitled to absolute immunity for their actions underlying Plaintiffs' Section 1983 claim. *See Mercer Cty. Childrens Medical Daycare, LLC*, 2014 WL 546346, at *4–5 (concluding in an earlier round of this litigation that Kennedy and Gottlieb were entitled to absolute immunity).

**C. Greenwald—Under Color of Law**

To establish a Section 1983 violation, the plaintiff must first show that the challenged conduct was committed by a person acting under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). The standard for satisfying the "under color of law" requirement in Section 1983 cases is

effectively the same as for demonstrating state action under the Fourteenth Amendment. *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Although Greenwald is a State Assemblyman, the Amended Complaint does not indicate that he took any actions to harm Plaintiffs in his official capacity. Rather, the Amended Complaint only concerns actions he took as a principal of Carlisle, namely calling Plaintiffs to demand payment for Carlisle's services. Plaintiffs have not met their burden of showing that these actions were carried out under the color of state law, and therefore they cannot serve as the basis for a Section 1983 claim. *See Mercer Cty. Childrens Medical Daycare*, 2014 WL 546346, at *4 (finding in an earlier round of this litigation that Greenwald was not acting under color of state law).

**D. State Law Claims**

In addition to the Section 1983 claim, the proposed Amended Complaint also brings state law claims for constitutional violations through the NJCRA, for malicious use of process, and for abuse of process. But because Plaintiffs' Section 1983 claim is not viable, the Court would decline to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (instructing that after dismissing original jurisdiction claims, district courts "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). And where the Court would decline to exercise supplemental jurisdiction, it is appropriate to deny a motion to amend. *Crump v. Passaic Cty.*, 147 F. Supp. 3d 249, 254 (D.N.J. Dec. 2, 2015) (citing *Saunders v. Bright*, 281 F. App'x 83, 85 (3d Cir. 2008)).

## IV. CONCLUSION

For the forgoing reasons, Plaintiffs' Motion to File an Amended Complaint is **DENIED**. And Order follows.


Dated: 3/16/2020                               /s/ Robert B. Kugler
                                               ROBERT B. KUGLER
                                               United States District Judge